UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

MICHAEL AHO KENNEDY

        Defendant.

_____/

No. 1:15-cr-183

Hon. JANET T. NEFF
U.S. District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Michael Aho Kennedy and the United States Attorney's Office for the Western District of Michigan.   The terms of the agreement are as follows:

1.    <u>Defendant Agrees to Plead Guilty</u>.    Defendant agrees to plead guilty to Counts 6 and 8 of the Indictment.   Count 6 charges Defendant with mail fraud in violation of Title 18, United States Code, Section 1341.   Count 8 charges Defendant with willfully making and subscribing a false Amended U.S. Individual Income Tax Return in violation of Title 26, United States Code, Section 7206(1).

2.    <u>Defendant Understands the Crime</u>.    In order for the Defendant to be guilty of violating Title 18, United States Code, Section 1341, the following must be true: (1) Defendant knowingly devised a scheme to defraud in order to obtain money or property; (2) the scheme included a material misrepresentation or concealment of a material fact; (3) the Defendant had the intent to defraud, meaning he intended to bring

about a financial gain to himself or a financial loss to another; and (4) in executing the scheme, Defendant deposited or caused another to deposit an item to be sent or delivered by the United States Postal Service.   In order for the Defendant to be guilty of violating Title 26, United States Code, Section 7206(1), the following must be true: (1) the Defendant signed an income tax return that contained a written declaration that it was made under penalties of perjury; (2) the income tax return contained a false statement; (3) the Defendant knew the statement was false; (4) the false statement was material; and (5) the Defendant made the false statement willfully, that is with the intent to violate a known legal duty.   The Defendant is pleading guilty because Defendant is guilty of the charges described above.

3.    The Defendant Understands the Penalty.      The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1341, is the following: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000.00, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.   The statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1), is the following: 3 years' imprisonment; a one-year period of supervised release; a fine of $250,000.00, or twice the gross gain or gross loss resulting from the offense, whichever is greater; costs of prosecution; and a mandatory special assessment of $100.   The Defendant agrees to pay the special assessments at or before the time of sentencing unless the Defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

2

4.    Mandatory Restitution for Mail Fraud (MVRA).    The Defendant understands that he will be required to pay full restitution as required by law.   The Defendant agrees that the restitution order is not restricted to the amounts alleged in the counts to which the Defendant is pleading guilty.   The parties currently believe that the applicable amount of restitution associated with the mail fraud is approximately $1,214,898.30, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.   Defendant further agrees that the restitution judgment will include victim J.D., although she was not specifically referenced in the indictment.

5.    Asset Forfeiture and Financial Accountability.   Defendant admits and agrees that the proceeds he obtained traceable to the scheme to defraud for which he is pleading guilty totaled $1,214,898.30.   Accordingly, Defendant agrees that his total forfeiture liability pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) totals $1,214,898.30.   To satisfy and to assist in satisfying this forfeiture liability, Defendant agrees to the following terms:

a.    Defendant admits that he used at least $102,340.00 in illegal proceeds from his scheme to defraud to make mortgage loan payments on his residence at 317 Hillcrest Drive, Petoskey, Michigan, which he jointly owned with his ex-wife during most of the scheme to defraud. The ex-wife then conveyed the property to their son, Grant McDonald Aho Kennedy, for no consideration.   Consequently, the Defendant acknowledges that his interest in the house is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).   The parties stipulate that the equity in the home is now approximately $67,000.   In lieu of the United States forfeiting 317 Hillcrest Drive,

3

Petoskey, Michigan, the Defendant agrees to the imposition of a forfeiture money judgment against himself in the amount of $67,000 after he tenders his guilty plea and prior to sentencing. The parties agree that $67,000 represents the Defendant's interest in the home's equity. The Defendant agrees to satisfy the $67,000 forfeiture money judgment by obtaining a cashier's check in the amount of $67,000 made payable to the "U.S. Marshals Service" and to deliver such check to Joel Fauson at the U.S. Attorney's Office, 330 Ionia Avenue, Northwest, Grand Rapids, MI 49503 no later than 28 days prior to his sentencing date. Upon receipt of the check, the Government will release 317 Hillcrest Drive, Petoskey, Michigan from forfeiture. Defendant admits that this money judgment and cash payment in lieu of forfeiting 317 Hillcrest Drive, Petoskey, Michigan is pursuant to 19 U.S.C. § 1614 as made applicable to forfeitures stemming from violations of 18 U.S.C. § 1341 pursuant to 18 U.S.C. § 981(d). Defendant understands and agrees that if the $67,000 is not paid as provided in this plea agreement not less than 28 days prior to Defendant's sentencing date, the Government shall move the Court to extinguish the Defendant's $67,000 money judgment and to enter a preliminary order of forfeiture that forfeits the Defendant's right, title, and interest in 317 Hillcrest Drive, Petoskey, Michigan to the United States. In such event, Defendant agrees not to contest the United States' motion for a preliminary order of forfeiture.

        b. Defendant consents to the imposition of a second forfeiture money judgment in the amount of $1,147,898.30, which Defendant agrees represents the balance of the proceeds that he obtained from his scheme to defraud. Defendant agrees that this sum is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Defendant agrees to the entry of a forfeiture money judgment after he tenders his guilty

4

plea and before the time of sentencing. Defendant agrees that the United States may satisfy this money judgment through the forfeiture of substitute assets pursuant to 21 U.S.C. § 853(p). Defendant further stipulates that the forfeiture of substitute assets is authorized because he spent the illegal proceeds he obtained and commingled them with other property, and the proceeds cannot be divided without difficulty.

        c.     Defendant agrees to disclose to law enforcement officials the whereabouts of, Defendant's ownership interest in, and all other information known to Defendant about all monies, property or assets of any kind (including funds and assets held by third parties), that Defendant obtained, directly or indirectly, as a result of the offense charged in Count 6 of the Indictment.

        d.     Defendant further agrees to assist and cooperate in the recovery of all monies, property, or assets derived from, or acquired as a result of, the offense charged in Count 6 of the Indictment.

        e.     Defendant further agrees, upon the U.S. Attorney's Office's request, to execute and deliver to the U.S. Attorney's Office a completed financial statement in a format supplied by the U.S. Attorney's Office that truthfully and completely discloses Defendant's assets, including any such assets held by third parties.

        f.     Defendant agrees to provide and/or consent to the release to the U.S. Attorney's Office of Defendant's tax returns for the previous seven years.

        g.     The U.S. Attorney's Office agrees to submit a restoration request to the Department of Justice Asset Forfeiture and Money Laundering Section for the application of any proceeds from forfeited property towards Defendant's restitution order. The Defendant acknowledges that the Department of Justice Asset Forfeiture and Money

Laundering section has the sole authority to grant or deny the restoration request and that the submission of such a request by the U.S. Attorney's Office does not guarantee that such request will be granted.

6.    Payment of Taxes Owed.

a.    Defendant agrees that the total amount of tax loss associated with his making and subscribing false tax returns from 2007 to 2009 for purposes of §2T1.1 and §2T4.1 of the Sentencing Guidelines is $306,788, as set forth in the following table:

| Tax Year | Intended Tax Loss |
|---|---|
| 2007 | $117,865 |
| 2008 | $91,118 |
| 2009 | $97,805 |
| Totals | $306,788 |

b.    Defendant further agrees to pay restitution in the amount of $100,876, plus interest to be calculated through sentencing.

| Tax Year | Amount of Tax | Amount Credited | *Interest | Total |
|---|---|---|---|---|
| 2007 | $36,869 | ($36,869)** | N/A | ($36,869) |
| 2008 | $29,239 | $0 | $ TBD | $29,239* |
| 2009 | $108,506 | $0 | $ TBD | $108,506* |
| Total Restitution | | | | $100,876* (plus interest) |

*Interest figures will be calculated by the IRS, under 26 U.S.C. 6601 and/or 6621, through the date of sentencing once the parties know that date.

**Defendant paid his 2007 taxes with victim V.W.'s money, then amended his 2007 return and sought a refund, which was not processed due to this investigation.

6

The restitution figure is calculated by taking the correct tax liability of Defendant in each tax year and subtracting any tax actually paid by Defendant in each year. Defendant understands and agrees that the restitution order will not be restricted to the amount alleged in the count to which the Defendant is pleading guilty. Defendant agrees to pay restitution by making payments as ordered by the Court in any restitution order entered pursuant to this plea agreement.

      c.      Defendant agrees that he will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax that he agrees to pay as restitution, including IRS Tax Form 870, "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment." Defendant additionally agrees to make himself available to the IRS for face-to-face interviews, to cooperate with IRS in audits of any false returns, to submit form 433-A, Collection Information Statement for Wage Earners and Self-Employed individuals, and to provide to the United States Probation Office a signed IRS Form 8821, "Tax Information Authorization," allowing the IRS to disclose tax information and contacts to the Probation Officer.

      d.      Defendant agrees not to file any claim for refund of taxes or interest represented by any amount of restitution paid pursuant to this agreement.

      e.      Defendant agrees that he is liable for the fraud penalty under Title 26, United States Code, Sections 6663 or 6651(f), on the amount of tax due and owing in paragraph (b) above. Defendant agrees to the immediate assessment of the fraud penalty on this amount and agrees that, in order to enable the IRS to

make an immediate assessment of the fraud penalty, the forms Defendant agreed to sign in paragraph (c) above will include the appropriate amount of the fraud penalty. Defendant agrees not to challenge or dispute any fraud penalties on the amount set forth in paragraph (b).

      f.    Defendant agrees that nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from the Defendant for the time periods covered by this agreement or any other time period. Defendant further agrees that this agreement, or any judgment, order, release or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the Defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period.

      g.    Defendant waives any and all objections that could be asserted to any division or unit of the IRS receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

      7.    <u>Factual Basis of Guilt.</u>    The Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

      From in or about July 2006, until in or about March 2012, Defendant operated a law practice and real estate business (called Hampton Properties) in Petoskey, Michigan. In his role as an attorney, Defendant drafted a trust for his long-time client and family friend, victim V.W. By July 2006, Defendant became the trustee of victim V.W.'s trust and assumed all fiduciary duties imposed by

8

Michigan law.   Shortly after becoming her trustee, Defendant executed a scheme to defraud V.W. out of over $1,000,000.00.   Defendant's scheme consisted of withdrawing money from bank accounts associated with V.W.'s certificates of deposit, depositing the money into his law office's client escrow account, and then subsequently transferring money from the escrow account to his own business operating account.   Defendant defrauded V.W. by regularly transferring more money from his client escrow account to his business operating account than was necessary for the payment of expenses on behalf of V.W. or that he had lawfully earned in his role as her trustee.   Defendant used V.W.'s money to pay for his personal expenses, his business expenses and some money for V.W.'s living expenses.   When Defendant had exhausted all of V.W.'s funds, he made fraudulent representations to victim J.D. in order to get her to invest in his Hampton Funds.   The Hampton Funds did not exist, but was only a ruse so that Defendant could obtain $114,000.00 from J.D. and use her money to continue paying the expenses of V.W. and J.D. that Defendant was obligated to pay.   Defendant's fraud scheme included the use of the mails because Defendant regularly sent V.W. a monthly statement of account through the United States Postal Service that falsely represented that the balance of her account was stable and earning interest, when in fact the balance of her account was rapidly diminishing due to Defendant's fraud.

Defendant also admits that he filed false Amended U.S. Individual Income Tax Returns for tax years 2007, 2008, and 2009.   Defendant's original returns correctly included the proceeds of his mail fraud scheme as income.   Defendant paid his 2007 tax liability with V.W.'s money.   However, because of the rate at which he stole from V.W. and because of the amount of fraud proceeds he included on his tax return as income, Defendant incurred large tax liabilities for tax years 2008 and 2009 that he could not pay.   When confronted about his past due tax obligations, Defendant falsely claimed that he mistakenly included loans and working capital contributions associated with his law practice as income on his 2007-2009 tax returns.   Defendant then amended his tax returns for 2007-2009, signed them under penalty of perjury, and falsely claimed that the proceeds of his fraud scheme were loans and working capital that were not subject to income tax. At the time that he filed these amended tax returns, Defendant knew that they were false because he knew that the amounts claimed on those returns as loans or working capital were truly attributed to the proceeds of his scheme to defraud V.W. and J.D.   Defendant's actions were willful because he knew that the money he unlawfully took from V.W. was subject to income tax and he knowingly amended his tax returns to avoid his tax liabilities.

8.     The United States Attorney's Office Agrees.

a.     Dismissal of Other Counts/Charges.     The U.S. Attorney's Office agrees to move to dismiss the remaining counts of the Indictment against the Defendant at the time of sentencing.   The Defendant agrees, however, that in determining the sentence the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within the applicable guidelines range, and the propriety of any departure from the calculated guidelines range. By this agreement the Defendant does not concede that an increased sentence or an upward departure is, in fact, warranted.

b.     Acceptance of Responsibility.     The U.S. Attorney's Office agrees not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under §3E1.1(a) of the Sentencing Guidelines.   However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1.   Should the Court grant a two-level reduction as provided herein, the Government states that the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying it of his intention to enter a guilty plea, thereby permitting the Government to avoid preparing for trial, and hereby moves the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater.

c.     Non-Prosecution Agreement.     The U.S. Attorney's Office for the Western District of Michigan agrees, except for criminal tax violations (including

10

conspiracy to commit such violations chargeable under 18 U.S.C. § 371) other than those tax charges set forth in the indictment, not to further prosecute the Defendant for violations of 18 U.S.C. § 1341 or 26 U.S.C. § 7206(1) arising out of the Defendant's scheme to defraud victim V.W. or J.D.   The Defendant understands that the U.S. Attorney's Office is free to prosecute the Defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

9.   The Sentencing Guidelines.   The Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the Defendant. The Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.   The Defendant understands that the Defendant and the Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed.   The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement.   The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

10.   There is No Agreement About the Final Sentencing Guidelines Range. The Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range.   Both parties reserve

11

the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

11. <u>Waiver of Constitutional Rights</u>. By pleading guilty, the Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the Defendant's guilty pleas, there will be no trial. At any trial, whether by jury or by the Court, the Defendant would have had the following rights:

a. The right to the assistance of counsel, including, if the Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the Defendant.

b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove the Defendant guilty beyond a reasonable doubt.

c. The right to confront and cross-examine witnesses against the Defendant.

d. The right, if the Defendant wished, to testify on the Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e. The right not to be compelled to testify, and, if the Defendant chose not to testify or present evidence, to have that choice not be used against the Defendant.

f. By pleading guilty, the Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

12.    <u>Waiver of Other Rights.</u>

A.    <u>Waiver.</u>   In exchange for the promises made by the government in entering this plea agreement, the defendant waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

B.    <u>Exceptions.</u>   The defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

1)    the defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

2)    the defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

3)    the district court incorrectly determined the Sentencing Guidelines range, if the defendant objected at sentencing on that basis;

4)    the defendant's sentence is above the Sentencing Guidelines range as determined by the court at sentencing and is unreasonable;

5)    the guilty plea was involuntary or unknowing;

6)    an attorney who represented the defendant during the course of this criminal case provided ineffective assistance of counsel.

If the defendant appeals or seeks collateral relief, the defendant may not present any issue in the proceeding other than those described in this subparagraph.

13.    <u>The Court is not a Party to this Agreement.</u>        The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.   The Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the

Defendant cannot, for that reason, withdraw his guilty pleas, and he will remain bound to fulfill all his obligations under this agreement.   The Defendant understands that no one – not the prosecutor, the Defendant's attorney, or the Court –   can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory maximum.

      14.   <u>This Agreement is Limited to the Parties</u>.   This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority.   This agreement applies only to crimes committed by the Defendant.   This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

      15.   <u>Consequences of Breach</u>.   If the Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the Defendant would otherwise be entitled under the terms of this agreement.   In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.   In such an event, the Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.   The Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

16.   <u>This is the Complete Agreement</u>.      This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.   No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

17.   <u>Deadline for Acceptance of Agreement.</u>      If a copy of this agreement, executed by the Defendant and defense counsel, is not returned to the U.S. Attorney's Office by November 27, 2015, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

PATRICK A. MILES, JR.
United States Attorney

11-24-2015
_____
Date

RONALD M. STELLA
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney.   I understand the terms of this agreement, and I voluntarily agree to those terms.   My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.   No promises or inducements have been made to me other than those contained in this agreement.   No one has threatened or forced me in any way to enter into this agreement.   Finally, I am satisfied with the representation of my attorney in this matter.


_11 - 24 - 15_____                    _____
Date                                                          MICHAEL AHO KENNEDY
                                                                 Defendant


I am Michael Aho Kennedy's attorney.   I have carefully discussed every part of this agreement with my client.   Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.   To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.


_11 - 24 - 15_____                    _____
Date                                                          RICHARD D. STROBA
                                                                 Attorney for Defendant


16