```
 1                   IN  THE  UNITED  STATES  DISTRICT  COURT

 2              FOR  THE  WESTERN  DISTRICT  OF  MICHIGAN

 3                        SOUTHERN  DIVISION

 4      UNITED  STATES  OF  AMERICA,

 5               Plaintiff,          No: 1:15cr183

 6       vs.

 7      MICHAEL  AHO  KENNEDY,

 8               Defendant.

 9


10      Before:

11                        THE  HONORABLE  RAY  KENT
                          U.S. Magistrate Judge
12                        Grand Rapids, Michigan
                          November 30, 2015
13                        Plea Proceedings

14      APPEARANCES:

15               MR. PATRICK MILES, U.S. ATTORNEY
                 By:  MR. RONALD M. STELLA
16               330 Ionia Avenue, NW
                 PO Box 208
17               Grand Rapids, MI 49501
                 616-456-2404
18                        On behalf of the Plaintiff;

19               FEDERAL PUBLIC DEFENDER
                 By:  MR. RICHARD D. STROBA
20               50 Louis Street NW
                 Suite 300
21               Grand Rapids, MI 49503-2633
                 616-742-7420
22                        On behalf of the Defendant.

23


24      TRANSCRIBED BY:  MS. KATHY J. ANDERSON, RPR, FCRR

25
```

1                           November 30, 2015

2                   PROCEEDINGS, 2:56 p.m.

3         THE COURT:  This is the court's case number 15cr183,

4 United States versus Michael Aho.

5         THE DEFENDANT:  Aho, yes.

6         THE COURT:  Michael Aho Kennedy.  Mr. Stella appears

7 on behalf of the government.  Mr. Stroba appears on behalf of

8 Mr. Kennedy.  We're here today because Mr. Stroba has notified

9 the court that Mr. Kennedy wishes to change his plea from not

10 guilty to guilty.  Is that right, Mr. Stroba?

11         MR. STROBA:  That's correct, Your Honor.

12         THE COURT:  And is that --  do you also agree with

13 that, Mr. Kennedy?

14         THE DEFENDANT:  I do, Your Honor.

15         THE COURT:  Mr. Kennedy, you have a number of rights.

16 I'm going to go through some of them with you now.  First and

17 foremost, as you sit here right now you still have the right to

18 remain silent.  You don't have to say anything to me about what

19 you're accused of, you don't have to say anything to

20 Mr. Stella, you don't have to say anything to any member of law

21 enforcement.  But if you do say anything to anybody other than

22 Mr. Stroba, what you say can be used against you.  Do you

23 understand that?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  And in fact, if we go forward here today

with your desire to change your plea from not guilty to guilty,
I'm going to be asking you questions about what you did and you
will have to waive your right to remain silent.  Do you
understand?

THE DEFENDANT:  Yes.

THE COURT:  As you sit here right now, you also still
have the right to persist in your plea of not guilty.  You are
presumed innocent of all the charges against you.  The
government through Mr. Stella has the burden of proving you
guilty on each charge beyond a reasonable doubt.  You still
have the right to a speedy and public trial by a jury with the
assistance of Mr. Stroba.  At that trial you would have the
right through Mr. Stroba to question or cross-examine any
witnesses that Mr. Stella might call on behalf of the United
States; you would have the right to call your own witnesses and
have the court issue subpoenas or court orders that they appear
and testify; you would have the right to present other evidence
that you believe demonstrates that you're not guilty of the
charges against you; you yourself would have the right to
testify at that trial, or if you chose to, to remain silent and
not have your silence used against you in any way.  Do you
understand all of those rights?

THE DEFENDANT:  I do.

THE COURT:  You do have the right to a lawyer.  You
have been and remain free to hire your own lawyer, however, you

1     asked the court to appoint a lawyer and I appointed or one of

2     my colleagues appointed Mr. Stroba.  He is a very experienced

3     criminal defense lawyer in this district and does exclusively

4     federal criminal defense work.  Have you been satisfied thus

5     far with the representation that Mr. Stroba has provided you?

6                 THE DEFENDANT:  I have.

7                 THE COURT:  Now, if you in fact you go forward and

8     plead guilty here this afternoon, there will be no trial of any

9     kind.  Do you understand that?

10                THE DEFENDANT:  I do.

11                THE COURT:  And you essentially will be giving up your

12    right to a trial and all the rights that I just talked about

13    that would occur in connection with the trial, but the one

14    right that you don't give up is your right to counsel.  Do you

15    understand that?

16                THE DEFENDANT:  Yes.

17                THE COURT:  So Mr. Stroba will be with you to the end

18    of this case whether it's the result of a guilty plea you

19    tender here this afternoon, whether it's the result of a trial,

20    whether the case ends here in the Western District of Michigan,

21    or in some court of appeals somewhere.  Do you understand that?

22                THE DEFENDANT:  I do.

23                THE COURT:  All right.  In order to go forward with

24    your plea, I'm going to be asking you some questions, and in

25    order to do that I'm going to have my courtroom deputy,

1    Jennifer, place you under oath here in a moment.  But you need
2    to understand that once you've been given the oath and sworn to
3    tell the truth, if you were to answer any of my questions
4    falsely here this afternoon, you would be subject to the
5    penalties of perjury and/or making a false statement, which are
6    separate crimes carrying their own penalties and own prison
7    terms.  Do you understand that?
8                    THE DEFENDANT:  Yes.
9                    THE COURT:  All right.  Jennifer.
10                  MICHAEL AHO KENNEDY, DEFENDANT, WAS DULY SWORN
11                  THE COURT:  Mr. Kennedy, how far did you get in
12   school?
13                  THE DEFENDANT:  Post graduate I think it's called,
14   went to law school.
15                  THE COURT:  Okay.  Let's start with high school.
16   Where did you go to high school?
17                  THE DEFENDANT:  Petoskey, Michigan.
18                  THE COURT:  And did you graduate from high school
19   there?
20                  THE DEFENDANT:  Yes.
21                  THE COURT:  And then you went on to college?
22                  THE DEFENDANT:  Michigan State University.
23                  THE COURT:  Okay.  What year did you graduate from
24   Michigan State?
25                  THE DEFENDANT:  I think '71.

1              THE COURT:  Probably shouldn't make editorial

2     comments, but it's a great time to be a Spartan, isn't it?

3              THE DEFENDANT:  It is, Your Honor, thank you.

4              THE COURT:  I agree a hundred percent.

5              And then where did you attend law school?

6              THE DEFENDANT:  Wayne State University.

7              THE COURT:  And did you graduate from Wayne?

8              THE DEFENDANT:  Yes.

9              THE COURT:  What year was that?

10             THE DEFENDANT:  That would have been '74, I think.

11             THE COURT:  We followed the same college and law

12    school trajectory, also a Tartar.

13             THE DEFENDANT:  Oh.

14             THE COURT:  As you sit here today, are you suffering

15    from any physical or mental condition that would make it

16    difficult for you to understand what's happening in court?

17             THE DEFENDANT:  No.

18             THE COURT:  In the last 24 hours have you had any

19    drugs, alcohol, or medication that would impair your ability to

20    follow the proceedings?

21             THE DEFENDANT:  No.

22             THE COURT:  Mr. Kennedy, it's important that you

23    understand that you have the right to have this hearing or

24    change of plea hearing conducted in front of Judge Neff.  Judge

25    Neff is the Article III judge appointed by President Bush.  She

1    is assigned to be the trial judge in your case, and she is the

2    judge who will ultimately sentence you if you're convicted.

3            Judge Neff's appointment by the President is a

4    lifetime appointment so she will be a federal judge as long,

5    essentially as long as she is able to or desires to continue.

6    I am not.  I'm a magistrate judge.  I'm not appointed by a

7    President.  I was appointed by the judges of the court.  I

8    serve an eight-year term.  My duty essentially is to assist

9    them in discharging their responsibilities.  Do you understand

10   the distinction?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Okay.  And do you consent to having me

13   handle this hearing today?  If I do, let me just say what will

14   happen.  Because I can't find you guilty.  And I can't

15   accept -- I understand there is a written plea agreement which

16   I have reviewed, but I can't accept the plea agreement or find

17   you guilty.  But what I can do with your consent is ask you the

18   questions Judge Neff would ask, advise you of the rights she

19   would as she would if she were here, and then after the hearing

20   prepare a written report to her about what happens in court

21   today, and a recommendation about whether she should accept

22   your plea.  Do you understand that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  And understanding those things, do you

25   consent to me handling the hearing?

1          THE DEFENDANT:  Yes.

2          THE COURT:  My courtroom deputy has projected on the

3     screen a copy of a consent form.  Does that bear your

4     signature?

5          THE DEFENDANT:  It does.

6          THE COURT:  Did you read and understand that consent

7     to proceed before me before you signed it?

8          THE DEFENDANT:  Yes.

9          THE COURT:  I believe your consent to proceed here is

10    a free will act by you, and informed, and we will move forward.

11          It's my understanding, Mr. Kennedy, that the

12    government has charged you in the indictment with a number of

13    crimes.  Counts 1 through 6 pertain to mail fraud.  Count 7, 8,

14    9 relate to the filing of a false amended income tax return,

15    and then there are forfeiture allegations also contained within

16    the indictment.  Have you had the opportunity to review those

17    charges and discuss them with Mr. Stroba?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you believe you understand the charges

20    in each of the counts against you?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And the forfeiture allegation?

23          THE DEFENDANT:  Yes.

24          THE COURT:  So my understanding is that here today

25    you'll be pleading guilty to only two of those counts, and that

9

would be Count 6, one of the mail fraud counts, and Count 8, one of the making and subscribing to a false amended U.S. income tax return count.  Is that your understanding?

THE DEFENDANT:  Yes.

THE COURT:  There are certain maximum penalties that apply if you are convicted of those counts.  On Count 6, the mail fraud count, the maximum penalty is not more than 20 years and/or a $250,000 fine, special assessment of a hundred dollars, mandatory restitution meaning the law requires Judge Neff to order you to pay restitution of any amounts the government proves you have stolen, and then finally, a period of supervised release of not more than three years.  Supervised release is a period of time following any prison term you might serve during which you're under the court's supervision and subject to conditions imposed by Judge Neff.

And first and foremost among those conditions would be that you not commit a new crime.  And there are consequences for violating supervised release.  So I'm going to give you an example.  If Judge Neff were to impose the maximum three years of supervised release, and during supervision you committed some violation of your supervised release, she could revoke your supervision and order you to go back to prison for up to the entire term of supervised release, under my example of three years.  So do you understand how supervised release works?

1       THE DEFENDANT:  Yes.

2       THE COURT:  Do you believe you understand the maximum

3    penalties then that attach to Count 6?

4       THE DEFENDANT:  I do.

5       THE COURT:  All right.  Count 8, the false amended tax

6    return count, carries a maximum prison term of three years,

7    and/or a $250,000 fine, a period of supervised release of not

8    more than one year, a mandatory special assessment or court

9    costs of a hundred dollars, and also provides for restitution.

10    Mr. Stella, is the restitution under Count 8 mandatory or

11    discretionary?

12       MR. STELLA:  Discretionary, Your Honor.

13       THE COURT:  All right.  Mr. Kennedy, do you understand

14    the difference?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Okay.  So even though you said yes I'm

17    still going to explain it very briefly.  You know, mandatory

18    restitution, which is required in Count 6, Judge Neff has no

19    alternative; if she finds money was stolen, she must order you

20    to pay it.  In Count 8, if she finds money was stolen, she may

21    but doesn't have to order you to pay.  So that's the

22    difference.  Understand?

23       THE DEFENDANT:  I do.  Thank you.

24       THE COURT:  Mr. Stella, can you please explain to

25    Mr. Kennedy the elements for each of Counts 6 and 8?

MR. STELLA:  Yes, Your Honor.  With respect to Count 6, the mail theft, the mail fraud count, the elements would be that the defendant knowingly devised a scheme to defraud in order to obtain money or property; that the scheme included a material misrepresentation or a concealment of a material fact; that the defendant had intended to defraud, meaning he intended to bring about gain to himself or cause a financial loss to another; and then finally in executing the scheme that the defendant deposited or caused another to deposit an item to be sent or delivered by the United States Postal Service.

THE COURT:  If I can have you stop right there for a moment, Mr. Stella.

MR. STELLA:  Sure.

THE COURT:  Mr. Kennedy, do you believe you understand the elements of Count 6?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Mr. Stella.

MR. STELLA:  And with respect to the filing of the false tax return, that the defendant signed an income tax return that contained a written declaration that it was made under penalty of perjury; that the income tax return contained a false statement; that the defendant knew the statement was false; that the false statement was material; and that the defendant made the false statement willfully, that is, with

1      intent to violate a known legal duty.

2              THE COURT:  Thank you, Mr. Stella.  Mr. Kennedy, do

3      you understand the elements of the charge?

4              THE DEFENDANT:  I do.

5              THE COURT:  Mr. Stella, briefly, and I guess this is

6      really touched upon in the plea agreement, but I just would ask

7      you to briefly inventory for Mr. Kennedy what evidence you

8      would produce at trial if in fact he decided, he changed his

9      mind and said I don't want to --

10             MR. STELLA:  Sure.  Your Honor, with respect to the

11     mail fraud scheme, the government would offer evidence that

12     Mr. Kennedy became the trustee in 2006 of an elderly client of

13     his, initials V.W., and that he had a duty, a fiduciary duty to

14     manage her money.  Pretty quickly after becoming her trustee,

15     he began to take money that he was not entitled to, either as a

16     legitimate fee for his trustee services, his legal services as

17     her trustee, or to meet her monthly personal and living

18     expenses.  And instead what he did was repeatedly go to her

19     bank, withdraw large sums of money from her investments,

20     deposit it into his law firm's interest only account, and then

21     would withdraw from that account and into his business account

22     more than was necessary to meet his trustee fees or her living

23     expenses.  And that money in turn was spent on his own personal

24     expenses, his business expenses, or to meet her monthly

25     expenses.

The mails were used, Your Honor, because he would send a false monthly statement to her each month indicating that the balance of the trust account was actually more than it was.  He was continuing each month to diminish the amount of the principal in the trust but yet he sent a statement showing that amount the principal was staying relatively stable and in fact was earning interest.  That was all false.

By 2010, he had pretty much used all of her money, stolen all of her money.  And at that point pitched another scheme to a different elderly client, someone with initials J.D., telling her that he could invest her money into the Hampton Funds which he claimed was an investment fund that he ran.  In reality, it wasn't.  That he took her money, immediately used it to help meet the monthly expenses that he could no longer meet for victim V.W., and then used up a good portion of her money before this all came to light.

So that is the facts that the government would show for the mail fraud.

THE COURT:  All right.  And then with regard to the false tax returns.

MR. STELLA:  Yes, Your Honor.  With respect to the tax returns, in 2007, 2008 and 2009, the defendant reported all of the stolen income from the victim, V.W., on his tax return. The first year he was able to pay a very large tax bill, $111,000 by using the victim's money.  But by 2008 and 2009,

1    it's the government's position that he had diminished her funds

2    so quickly that he was no longer able to pay the very large tax

3    bills that were around 80 or $90,000 for each of those years.

4    When the IRS came knocking to ask why he wasn't paying his 2008

5    and 2009 tax obligations, the defendant made a comment to the

6    IRS that he had had an epiphany; he realized that -- and he

7    realized that really was not income that was on his return, but

8    it was loans or working capital that he was entitled to take.

9    And so he amended his tax returns to remove that money as

10   income and then sought refunds from the government.

11        Those tax returns were false because the money truly

12   was income as indicated in the original returns.  He signed the

13   false statement and the return under penalty of perjury and

14   filed it with the IRS.

15        THE COURT:  Thank you, Mr. Stella.  Mr. Kennedy, do

16   you understand the evidence that the government would offer

17   against you?

18        THE DEFENDANT:  I do.

19        THE COURT:  Mr. Kennedy, if in fact you're convicted

20   of Counts 6 and 8 or any other counts in this matter if you

21   went to trial, for example, there are certain sentencing

22   guidelines that would apply to your case.  These guidelines

23   were adopted as part of the Sentencing Reform Act of 1984.

24   Have you and Mr. Stroba discussed those?

25        THE DEFENDANT:  Yes, we have.

1        THE COURT:  And how they might apply to you, both if

2    you were to go to trial and lose, or if you were to in fact go

3    forward with your guilty plea?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Mr. Kennedy, it's important that you

6    understand that Judge Neff will not be able to determine what

7    the advisory guideline range applicable to your case is until

8    after there's been a presentence investigation, the preparation

9    of a presentence report, and both Mr. Stella on behalf of the

10   government and Mr. Stroba on your behalf are given an

11   opportunity to comment on it.  Do you understand that?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Mr. Stella, does the government retain its

14   right to appeal under the terms of the plea agreement?

15       MR. STELLA:  Yes, Your Honor.

16       THE COURT:  All right.  Mr. Kennedy, the government

17   almost never --  in my experience, both as a lawyer and judge,

18   never surrenders its right to appeal a sentence.  And they

19   haven't done so in your case.  Do you understand that?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Do you understand that in the federal

22   system parole has been abolished.  If you're sent to prison you

23   will not be released on parole?

24       THE DEFENDANT:  Yes.

25       THE COURT:  There is a concept called good time

1    credit; if you receive a prison sentence some inmates earn time

2    off of their sentence by essentially following the rules,

3    staying out of trouble, and being productive while they are in

4    custody.  Have you discussed that issue with Mr. Stroba?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Do you understand, Mr. Kennedy, that if

7    the sentence Judge Neff ultimately imposes upon you is more

8    severe than you expect, that you will not be allowed to

9    withdraw your guilty plea and in fact will remain bound by it?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Do you believe now that you understand the

12    nature of the charges against you, the maximum penalties that

13    could be imposed upon you, and your constitutional rights?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Understanding all of those things, how do

16    you plead to the charges against you contained in Count 6 and 8

17    of the indictment?

18            THE DEFENDANT:  Guilty, Your Honor.

19            THE COURT:  Guilty as to both counts?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Mr. Kennedy, is your decision to plead

22    guilty the result of any force, threats, or coercion?

23            THE DEFENDANT:  No.

24            THE COURT:  Is your decision to plead guilty the

25    result of any promises made to you by anyone that are not

1    contained within the plea agreement?

2            THE DEFENDANT:  No.

3            THE COURT:  Is your decision to plead guilty a free

4    will and voluntary act by you?

5            THE DEFENDANT:  Absolutely.

6            THE COURT:  Does your decision to plead guilty result

7    at least in part from plea discussions that took place between

8    your attorney and the government culminating in the written

9    plea agreement?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Have you had the opportunity to read and

12   review the entire written plea agreement with Mr. Stroba?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Have you had a chance to ask him any

15   questions that you have about the plea agreement?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right.  Mr. Kennedy, we're going to go

18   through the plea agreement now.  It's fairly lengthy.  I'm

19   going to start by asking Mr. Stella, I'm going to start by

20   asking Mr. Stella to summarize what the government believes are

21   the important terms of the plea agreement.  And then we will

22   give Mr. Stroba an opportunity to add anything that he may

23   wish, and you an opportunity.  Mr. Stella.

24           MR. STELLA:  Thank you, Your Honor.  From the

25   government's perspective, I would say that what the plea

1    agreement is doing is it's giving the defendant the right to

2    plead guilty to just two of the counts in the indictment as the

3    Court has covered 6 and 8.  In exchange for that, the

4    government has agreed to leave some limited rights for the

5    defendant in terms of challenging any sentence on appeal.

6          There is mandatory restitution for the mail fraud

7    count, as the Court has indicated.  Discretionary restitution

8    with respect to the tax counts.  There is an asset forfeiture

9    provision.  I don't know how much detail the Court wants on

10   that.  But the gist of the asset forfeiture provision is that

11   the defendant will have a money judgment against him for an

12   amount equal to or the amount of the restitution that is

13   ordered with respect to the mail fraud count.

14         That judgment in terms of any payment against the

15   restitution the government will suggest to the Department of

16   Justice and ask for authority to apply that against the

17   restitution but that does not necessarily have to happen.

18   There is the chance here the defendant would be exposed to both

19   the restitution amount and the money judgment amount.

20         THE COURT:  I notice there was something in the plea

21   agreement about a house in Petoskey.

22         MR. STELLA:  Yes, Your Honor.

23         THE COURT:  Put on the record and explain to me what

24   the situation is with that.

25         MR. STELLA:  So the government is asserting its asset

1    forfeiture rights with respect to the house because the

2    defendant has agreed that money from the fraud, from the

3    embezzlement and the mail fraud was used to pay for the house.

4    The house has a $67,000 equity in it, according to the

5    government's calculations, and so what we are doing is if the

6    defendant pleads guilty and his plea is accepted by Judge Neff,

7    there will be an immediate judgment for that $67,000 at that

8    point.  And then if the defendant can satisfy that $67,000 by

9    tendering money to the government at least 28 days before the

10   sentencing, the government will agree to relinquish the house

11   from the forfeiture rights that the government has in exchange

12   for that money, and a judgment will enter for the remaining

13   balance of the restitution minus that 67,000.  It gives the

14   defendant an opportunity to retain the home.  I understand his

15   adult son is living in it now.  He wants to remain in that

16   home.  The government is only entitled to the equity interest,

17   and that's why that provision is in there.  If he can't meet

18   it, we will enter the judgment for the full amount.

19          THE COURT:  So the money doesn't actually have to come

20   from Mr. Kennedy.

21          MR. STELLA:  No, Your Honor.

22          THE COURT:  I don't know what's going on in the

23   background here.  But hypothetically, the son could choose to

24   pay the 67,000.

25          MR. STELLA:  Correct, Your Honor.  The key is the

1  tendering of $67,000 to the government 28 days before the

2  sentencing.

3       THE COURT:  All right.  Fair enough.

4       MR. STELLA:  The tax count, Your Honor, has other

5  provisions in them.  I think in summary, they require the

6  defendant to cooperate with the IRS and in all respects, not

7  just with respect to any restitution that's ordered in the

8  criminal case, but to sign forms and provide information to

9  allow his civil, the civil penalties that might follow from his

10  false tax returns as well to be adjudicated.  And I think that

11  summarizes the key provisions from the government's

12  perspective.

13       THE COURT:  All right.  Mr. Stroba, anything you would

14  add?

15       MR. STROBA:  Just this, Your Honor.  This is perhaps

16  the third version of the plea agreement that we've had a chance

17  to go over.  I have gone over each version with Mr. Kennedy.

18  Even this last version had a couple of changes that needed to

19  be made before we could finally sign it and present it to the

20  court.  I believe during that time period Mr. Kennedy has had

21  the plea agreement in his hands, a version of the plea

22  agreement in his hand for quite sometime.  So I believe he's

23  had a full opportunity to review both the plea agreement terms

24  as well as the factual basis provided in paragraph 7 on page 8,

25  I believe it is, to satisfy the court that a factual basis

1  exists.  And more importantly, that he understands all of the

2  terms.

3            The Court's question about the house, Mr. Stella and I

4  have had several opportunities to discuss that, and as the

5  Court might imagine, Mr. Kennedy is not in a position to come

6  up with that money, but if in fact there is some way, there's

7  also a lien from a bank on it that virtually takes up all the

8  rest of the equity that may exist.  So there will have to be a

9  lot of negotiation done probably by somebody else.  Thank you.

10           THE COURT:  All right.  Mr. Kennedy, I do want to turn

11  your attention to the factual basis set out in paragraph 7

12  beginning on page 8.  Have you read that?

13           THE DEFENDANT:  I have.

14           THE COURT:  I'm going to start rather than with you

15  with Mr. Stella.  Mr. Stella, does the government believe that

16  the factual basis of guilt set forth in paragraph 7 is

17  accurate?

18           MR. STELLA:  Yes, Your Honor.

19           THE COURT:  Mr. Stroba, do you believe it's accurate?

20           MR. STROBA:  I do, Your Honor.

21           THE COURT:  Okay.  Mr. Kennedy, do you believe it's

22  accurate?

23           THE DEFENDANT:  I do.

24           THE COURT:  Do you agree with everything set forth in

25  paragraph 7, Mr. Kennedy?

1     THE DEFENDANT:  Yes.

2     THE COURT:  Well, it certainly is a detailed account

3  of what happened here.  And even though your lawyer and the

4  U.S. Attorney' office have agreed and you have agreed to

5  stipulate to those facts, I would like you to tell me in your

6  own words what it is that you did that you think makes you

7  guilty.

8     THE DEFENDANT:  Would you like me to stand?

9     THE COURT:  You don't have to stand.

10     THE DEFENDANT:  Okay.  Well, as the plea agreement

11  states, I had a very nice client who I understand has passed

12  away, and I became a successor trustee for her trust.  And

13  during the course of time I withdrew the money from the

14  account, it was under the trust's name, and would deposit it in

15  my IOLTA account.  And then from that IOLTA account I would

16  periodically pay it out.  And the two principal payees were for

17  V.W. to cover her expenses as they came due, because as trustee

18  I would pay for her expenses, and then unfortunately, and I

19  regret, I took money and paid myself for various things,

20  including trustee fees, including payments on the house, and

21  for other instruments and activities.  Again, I regret that.

22     Then for J.D., she had an account, much smaller

23  account, and I cashed those CDs in.  And I had a Power of

24  Attorney over those, as I recall.  And then paid those expenses

25  for J.D. again, for the client, and then for my own personal

1     expenses.

2            And I understand, and I agree, and I apologize, and I

3     regret that I did not understand that as fiduciary I cannot pay

4     any moneys to myself.  And that is the gist of it, and the --

5     the plea agreement accurately reflects more detail about it.

6            THE COURT:  Mr. Kennedy, I just want to clarify one

7     thing you said.  And that is, I mean you understood as a

8     lawyer, as a lawyer who has evidently some experience in trust

9     law, that you were prohibited by law from taking money out of

10    the trust for your own purposes.

11           THE DEFENDANT:  Well --

12           THE COURT:  I mean are you, are you saying --  I just

13    want to be clear.  Let me ask you a different question.  Leave

14    that question aside for now.

15           You're not suggesting that you took money out of that

16    trust account and spent it on yourself in the mistaken belief

17    that it was okay to do that, are you?

18           THE DEFENDANT:  No.

19           THE COURT:  You knew it was wrong?

20           THE DEFENDANT:  Yes.

21           THE COURT:  You knew it was wrong while you were doing

22    it?

23           THE DEFENDANT:  Yes.

24           THE COURT:  All right.  And these actions took place

25    in the Western District of Michigan?

1      THE DEFENDANT:  Yes, in Petoskey, Michigan.

2      THE COURT:  And they took place in the time period

3  between July of 2006 and March of 2012?

4      THE DEFENDANT:  Yes.

5      THE COURT:  And as part of these activities, you would

6  mail statements concerning V.W.'s trust account to her and

7  later to family members?

8      THE DEFENDANT:  Yes.

9      THE COURT:  And you would do that through the U.S.

10  mail?

11      THE DEFENDANT:  Yes.  And I neglected to mention that

12  in my verbal essay.

13      THE COURT:  No problem.  And then you amended your tax

14  return for the year 2009, is that right?

15      THE DEFENDANT:  Yes.

16      THE COURT:  And in the amendment, you made statements

17  that you knew were untrue?

18      THE DEFENDANT:  Yes.

19      THE COURT:  All right.  Mr. Stella, anything the

20  government would ask for by way of additional factual basis for

21  the plea?

22      MR. STELLA:  Just very briefly, Your Honor.

23  Mr. Kennedy, when you mailed the statements out, those

24  statements that went to V.W. were false, correct?

25      THE DEFENDANT:  Yes.

1          MR. STELLA:  It did not state a true balance of her

2     trust account?

3          THE DEFENDANT:  No.

4          MR. STELLA:  In fact, you didn't share the full

5     information with your secretary who prepared those, is that

6     correct?

7          THE DEFENDANT:  Yes.

8          MR. STELLA:  You had the true statements of account

9     knowing the balance was reducing because of your embezzlement,

10    but your secretary started from a number she thought was the

11    same every month and maybe even growing, correct?

12         THE DEFENDANT:  Yes.

13         MR. STELLA:  And you knew that when you had those

14    mailed out by her?

15         THE DEFENDANT:  Yes.

16         MR. STELLA:  And the victims here, V.W., would it

17    surprise you that she was 81 years old in 2016 when you first

18    became her trustee?

19         THE DEFENDANT:  No.  I knew she was aged.

20         MR. STELLA:  And J.D., victim J.D., did you know she

21    was 97 years old in 2010?

22         THE DEFENDANT:  Yes.

23         MR. STELLA:  And the personal expenses, I just want to

24    pick up on what the Court was saying.  I mean you know you

25    weren't authorized to pay money on personal expenses.  Did you

1    spend some of this money on vacations with your family?

2            THE DEFENDANT:  Yes, I did.

3            MR. STELLA:  And a horse for your daughter?

4            THE DEFENDANT:  Yes.

5            MR. STELLA:  And many luxury items?

6            THE DEFENDANT:  Many items, yes.

7            MR. STELLA:  Okay.  That's all, Your Honor.  Thank

8    you.

9            THE COURT:  Thank you, Mr. Stella.  Mr. Stroba,

10   anything further from you, sir?

11           MR. STROBA:  No, Your Honor, I believe the factual

12   basis has been established as to both Counts 6 and 8.

13           THE COURT:  Mr. Kennedy, in addition to we talked

14   about paragraph 7, factual basis count of the plea agreement.

15   Have you read the entire plea agreement?

16           THE DEFENDANT:  I have.

17           THE COURT:  And have you had ample opportunity to

18   discuss every part of it with Mr. Stroba?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Have you asked him every question that you

21   had about the plea agreement?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Do you understand each and every part of

24   the plea agreement?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Mr. Stella, were you going to say

2   something?

3          MR. STELLA:  I was, Your Honor, but not until I knew

4   you were completed.

5          THE COURT:  All right.  Good time to say whatever you

6   have in mind.

7          MR. STELLA:  Well, I just, Your Honor, I'm sorry, I

8   just wondered if we covered specifically the waiver of appeal.

9   I know it was mentioned but I don't know if we talked about the

10  acceptance or if we even need to.

11         THE COURT:  We should.  Absolutely.

12         MR. STROBA:  Page 13, Your Honor.

13         THE COURT:  Thank you, Mr. Stroba.  Mr. Kennedy, we

14  talked earlier about the fact that the government is not giving

15  up its right to appeal your sentence.  Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  On the other hand, you are giving up some

18  of your appeal rights --

19         THE DEFENDANT:  Yes.

20         THE COURT:  -- in addition to the trial rights we

21  already talked about.  Your waiver of your right to appeal is,

22  however, not absolute, it's subject to certain exceptions, and

23  those would include if you're sentenced on any count of

24  conviction exceeding the statutory maximum sentence for that

25  count, you can appeal; if your sentence was based upon an

unconstitutional factor such as race, religion, national origin

or gender, you can appeal; if you believe that the district

court, Judge Neff in this case, incorrectly determines your

sentencing guideline range, and you and/or Mr. Stroba object to

that at or before the sentencing hearing, you can appeal that;

if your sentence is above the guideline range determined by

Judge Neff, and is unreasonable, you can appeal; if your plea

as opposed to a sentence, if your plea itself was involuntary

or unknowing, you can appeal; or if Mr. Stroba has provided

ineffective assistance to you during the negotiation and entry

of your plea you can appeal.  But other than those six reasons

you're giving up your right to appeal.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You should also understand that Judge Neff

is not a party to this agreement and is under no obligation to

accept any recommendation made by the parties; that if Judge

Neff ignores any such recommendations and imposes any sentence

up to the statutory maximum sentence, you cannot for that

reason withdraw your guilty plea.  You in fact would remain

bound by it.  I know we touched on that earlier.  But do you

understand that very important point?

THE DEFENDANT:  Yes.

THE COURT:  And that no one, not, not Mr. Stella, not

Mr. Stroba, not me can make any kind of binding prediction

about what sentence Judge Neff will ultimately impose.

1      THE DEFENDANT:  I understand.

2      THE COURT:  Any other portions of the plea agreement

3  you think are important to note on the record, Mr. Stella?

4      MR. STELLA:  No, Your Honor.  Thank you.

5      THE COURT:  Mr. Stroba.

6      MR. STROBA:  No, Your Honor, nothing in the plea

7  agreement.  Although, I would state for the record just so it's

8  clear, there are state charges pending against Mr. Kennedy.

9  Mr. Stella cannot bind the Attorney General who is prosecuting

10  those charges.  I have explained that to Mr. Kennedy.  We have

11  no understanding on how those charges will be resolved.  I

12  don't represent him on those charges, of course.  But there has

13  been some discussion about that, some discussion about what we

14  hope may happen in regard to those charges, but that is not

15  part of the plea agreement here.  And Mr. Kennedy and I have

16  had a lengthy discussion about that.

17      THE COURT:  Okay.  Mr. Kennedy, do you understand what

18  Mr. Stroba just said?

19      THE DEFENDANT:  I do.

20      THE COURT:  Do you agree with what he just said?

21      THE DEFENDANT:  Yes.

22      MR. STROBA:  Nothing further, Your Honor.

23      THE COURT:  Because he's right.  I mean, you know,

24  Mr. Stella can't, who represents the United States of America,

25  can't bind the State of Michigan.  So he couldn't, Mr. Stella

1    could not promise you that any state charges will be disposed

2    of in any way.  Because he simply lacks the authority.  Do you

3    understand that?

4           THE DEFENDANT:  I do.

5           THE COURT:  I will say this.  And this is not intended

6    to suggest the outcome in your case.  But it's not uncommon

7    when there are pending state charges and then the United States

8    brings charges based on the same conduct and obtains a

9    conviction, it's not unusual for the State of Michigan to

10   ultimately dismiss the state charges.  But I have no idea.

11          THE DEFENDANT:  I understand.

12          THE COURT:  And you understand that can't be any part

13   of your decision today.

14          THE DEFENDANT:  I understand.

15          THE COURT:  All right.  Mr. Kennedy, I find that your

16   plea of guilty here to Count 6 and 8 was made knowingly and

17   with full understanding of each of the rights that I explained

18   to you; that it was made voluntarily by you and free from any

19   force, threats, coercion, or promises other than those

20   contained in the written plea agreement; that you understand

21   the nature of the charges against you, the maximum penalties

22   for those charges, your constitutional rights, and that the

23   plea has a sufficient factual basis.

24          I'm going to defer acceptance of the plea agreement

25   itself to Judge Neff.  I will author a recommendation, a report

and recommendation recommending acceptance of your plea,
adjudication of you guilty on Counts 6 and 8.  A report and
recommendation will be forthcoming.  The case is clearly not
appropriate for expedited sentencing.

I'm going to order the preparation of a presentence
investigation report.  Your case will be assigned to a
probation officer.  Probation officer will do an investigation,
an independent investigation, which will include interviewing
you at some length about lots of things like your childhood,
your upbringing, education, work history, health history,
family history, criminal history, if there is any.  You'll be
asked to sign authorizations which will allow the probation
department access to reports, tax reports, employment, health,
lots of different things.  The probation officer will pull all
of that information together and prepare a report for Judge
Neff painting a far more complete picture of who you are and
how you got to be where you are today.  As part of that report,
the probation officer will calculate your sentencing
guidelines.

All of that will be disclosed both to Mr. Stroba and
to Mr. Stella at least a month before you're sentenced.  You'll
have an opportunity -- I'm sure Mr. Stroba will sit down and go
through the report with you.  Both sides will have an
opportunity to voice any objections they have to the report,
suggest any corrections, or changes.  If there are unresolved

1    objections to the report at the time of sentencing, Judge Neff

2    will decide those.

3              Until then, I'm going to order you to continue in the

4    custody of the U.S. Marshal.

5              Mr. Stella, anything else from the government at this

6    time?

7              MR. STELLA:  No.  Thank you, Your Honor.

8              THE COURT:  Mr. Stroba, how about you, sir?

9              MR. STROBA:  No, Your Honor.  Regarding the

10   presentence report, though, I would indicate that's already, we

11   have already got that process rolling.  The probation officer

12   has been assigned and a proposed scheduling date for sentencing

13   is in the works.

14             THE COURT:  Okay.  Wonderful.  Mr. Kennedy, did you

15   understand everything that happened in court today?

16             THE DEFENDANT:  I did, Your Honor.  Thank you for

17   explaining it.

18             THE COURT:  You're welcome.  Do you have any questions

19   for me before I adjourn your case?

20             THE DEFENDANT:  I do not.

21             THE COURT:  Well, we will be adjourned then.  And good

22   luck to you, Mr. Kennedy.

23             THE DEFENDANT:  Thank you for your time.

24             THE CLERK:  All rise, please.  Court is adjourned.

25             (Proceedings concluded, 3:40 p.m.)

```
 1                    C E R T I F I C A T E

 2

 3        I certify that the foregoing is a transcript from the

 4   Liberty Court Recording System digital recording of the

 5   proceedings in the above-entitled matter to the best of my

 6   ability.

 7

 8

 9

10                         /s/ Kathy J. Anderson

11                         Kathy J. Anderson, RPR, FCRR

12                         U.S. District Court Reporter

13                         402 Federal Building

14                         Grand Rapids, MI  49503

15

16

17

18

19

20

21

22

23

24

25
```